UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JESUS M. CANO, | | |
| | Plaintiff, | 19 Civ. 8810 (PAE) (KHP) |
| -v- | | OPINION & ORDER |
| SEIU LOCAL 32BJ, et al., | | |
| | Defendants. | |

PAUL A. ENGELMAYER, District Judge:

Plaintiff Jesus M. Cano, proceeding *pro se*, brings this action against his former employer, Solil Management, LLC and Sol Goldman Investments, LLC (collectively, "Solil") and his union, the Service Employees International Union Local 32BJ ("Union").[1] Cano asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C §§ 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*, the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-101 *et seq.*, the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151 *et seq.*, the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 158, and common law claims for defamation and negligent infliction of emotional distress. Some claims are directed to all defendants; others are specific to Solil or the Union.

---

[1] Cano's Amended Complaint did not include as defendants numerous individuals named in his original complaint. *See* Dkts. 2, 39. Cano has objected that Magistrate Judge Parker's Report and Recommendation in this case improperly "added Solil individual defendants to the complaint." Dkt. 79 at 1. It did not. In any event, the Court understands Cano to have voluntarily dismissed his claims against the individual defendants.

Defendants have moved to dismiss all of Cano's claims. For the reasons that follow, the Court adopts in its entirety the Report and Recommendation (the "Report") of the Hon. Katharine H. Parker, United States Magistrate Judge, as to the disposition of this motion.

## I.    Factual Background[2]

Cano is a 54-year-old Hispanic male of Colombian descent. Dkt. 39 ("Amended Complaint," or "AC") at 4. Between November 2016 and December 2018, Solil employed Cano as a doorman and handyman at various locations in Manhattan.[3] *Id.* at 9; Dkt. 66 at 30. In late April 2018, after an incident in which Cano was believed to be potentially responsible for a tenant's lost dry-cleaning, Solil transferred Cano from his position as a doorman at a building on East 35th Street to one as a handyman at a building on the Upper East Side.[4] AC at 6; Dkt. 2 at 33–34; Dkt. 66 at 31.

---

[2] As Cano objects to various aspects of the Report's statement of facts, the Court sets out the relevant facts here. This account draws primarily from the Amended Complaint. The Court also considered documents appended to Cano's original complaint and those incorporated by reference into, or otherwise integral to, the Amended Complaint. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss . . . a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."); *Littlejohn v. City of New York*, 795 F.3d 297, 305 n.3 ("In reviewing a Rule 12(b)(6) motion to dismiss, it is proper for this court to consider the plaintiff's relevant filings with the EEOC and other documents related to the plaintiff's claim, even if they are not attached to the complaint, so long as those filings are either incorporated by reference or are integral to and solely relied upon by the complaint.") (cleaned up). For the purpose of resolving the motions to dismiss, the Court presumes all well-pleaded facts to be true and draws all reasonable inferences in favor of the plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[3] Cano objects to the Report's failure to note that, between May 2014 and November 2016, Cano worked for Solil at a building in Brooklyn. Dkt. 79 at 2. The Court credits that that is so, though it has no apparent relevance here.

[4] Cano alleges that a Solil payroll administrator, Vivian Orellana, discriminated against him by not reviewing a supposedly exculpatory video regarding the dry-cleaning incident. AC at 6. But Cano voluntarily dismissed Orellana as a defendant. *See supra* n.1. And the AC does not plead

Most of the relevant alleged discrimination and harassment occurred in summer and fall 2018, following Cano's transfer. Cano and another handyman at the building, Martin Ball, did not get along. The two found themselves in numerous disputes about work-related issues such as how to fix appliances around the building and who had to work where and when. As relevant here, Cano claims that Ball engaged in harassing behavior, including severe name-calling, on the basis of Cano's race, national origin, and age. For example, on August 7, 2018, Ball allegedly called Cano a "fucking Columbian [sic], motherfucker" and became "violent." AC at 6–7. That day, Ball also stated, "I can imagine this building in a couple years being run by three old men" and that he wanted a younger person to fill in the handyman position, as the previous handyman had been 73 years old and had "leg problems," leaving Ball "to do all the hard ph[y]sical work for years." *Id.* On an unspecified date, Ball also allegedly called Cano a "faggot, fucking Colombian, fucking Spanish." *Id.* at 17.

Cano complained about Ball's behavior to building superintendent Edo Mehmedovic "many times," but Mehmedovic "did nothing to correct the situation." *Id.* at 5, 8, 17. To the contrary, Cano alleges that on September 17, 2018, in response to his complaints, he was notified that he would be suspended without pay for two weeks. *Id.* at 8; *see also* Dkt. 2-1 at 10. Cano alleges that Mehmedovic also directly made discriminatory comments. For instance, when Mehmedovic delivered Cano the suspension letter, he stated, "you don't belong here, fucking Colombian, you don't even deserve[] to live in this country, and I will get you fired soon." AC at 8. At one point, Mehmedovic also allegedly told Cano that he was a "slave for working in the

---

facts from which the Court could infer that Orellana's conduct constituted discrimination on the basis of a protected category, contributed to a hostile work environment, or was impermissibly retaliatory. Her alleged conduct does not support any of Cano's claims against Solil or the Union.

building and had to take all verbal abuse from tenant[s]." *Id.* at 17.  On October 3, 2018, Cano
returned to work.

Solil, for its part, argues that it suspended Cano because of his poor work performance
and problematic interactions with tenants. *See, e.g.*, Dkts. 2-1 at 17; 47 at 1–3.  But Cano alleges
that both Mehmedovic and property manager Scott Price (who signed Cano's suspension letter)
fabricated tenant complaints as a pretext for taking disciplinary action against Cano.  AC at 17;
*see* Dkt. 2-1 at 10.  For instance, Cano claims that Price "wrote false statements" regarding
Cano's suspension and eventual termination, and that Mehmedovic wrote down "fake work
orders" to create the appearance that Cano "was doing unsatisfactory work."  AC at 5, 8.  Cano
also alleges that Price never issued a verbal warning on July 31, 2018, despite there being a
written record of as much in Cano's employee file—the implication being that Price fabricated
and planted that record.  *See id.* at 8; Dkt. 2 at 47.  At the pleadings stage, the Court must accept
Cano's allegations as true.

On November 19, 2018, Cano confronted Price to ask why "he was helping Mr. Ball."
AC at 8.  In response, Price told Cano, "I don't like fucking Spanish people, you don't even
deserve[] to work here and you should go looking for a new job as[s]hole, you should continue
drug trafficking in Colombia and stop wasting my fucking time."  *Id.*  On December 12, 2018,
Solil notified Cano that his employment would be terminated.  *Id.* at 9; Dkt. 2-2 at 50–51.

Both before and after his termination, Cano filed multiple grievances with his Union,
Service Employees International Union Local 32BJ.  On September 18, 2018, Cano filed a
grievance claiming that he had been "unjustly suspended"; on September 28, 2018, Cano filed a
grievance claiming that Ball had been harassing him "during the performance of their work
duties" and sought "to have this harassment cease and desist"; and on December 14, 2018, Cano

filed a grievance claiming that he had been "unjustly discharged" and that Mehmedovic and Price had been harassing him "during the performance of their work duties" and sought "to have this harassment cease and desist." AC at 9; *see* Dkt. 2 at 21–23. On December 14, 2018, the Union sent a cease-and-desist letter to Solil regarding Mehmedovic's alleged harassment. AC at 9. On January 8, 2019, the Union sent a separate cease-and-desist letter to Solil regarding Ball's and, potentially, Mehmedovic's or Price's alleged harassment.[5] *Id.* By those dates, however, Cano had already been terminated. He was not reinstated.

On July 8, 2019, Cano sent the Union an "Arbitration Request Letter" regarding his termination. Dkt. 20 at 3. On April 17, 2020, the Union determined that Cano's claims lacked "sufficient merit for the Union to be likely to prevail in arbitration" and informed Cano that it would not bring the case forward. *Id.* at 4. Cano did not appeal from the decision.

Cano also filed charges with the National Labor Relations Board ("NLRB"). On November 16, 2018—between Cano's suspension and termination—Cano filed two charges, each alleging that the Union failed to properly process the grievances he filed "for arbitrary or discriminatory reasons or in bad faith." AC at 9; Dkt. 63-2 at 6, 12. On December 14, 2018, Cano filed a charge with the NLRB alleging that Solil retaliated against him by firing him "for filing grievances seeking to enforce a collective-bargaining agreement." AC at 9; Dkt. 63-2 at 18. On February 28, 2019, the NLRB dismissed the charges, finding "no evidence that [Solil] bore any hostility toward [Cano's] protected activity" and that the Union did not "breach[] its duty of fair representation." Dkt. 2-2 at 57. Cano appealed from the decision. On June 27, 2019, the NLRB denied the appeal. *Id.* at 60; Dkt. 63-2 at 21.

---

[5] The AC states that the letter was sent "to Solil Management for Mr. Martin Ball harassment against me, in this letter he refers to him as 'my Supervisor.'" AC at 9. It is unclear who the "[s]upervisor" referred to is.

5

Cano separately filed charges with the Equal Employment Opportunity Commission ("EEOC"). On January 28, 2019, Cano filed charges against Solil and the Union, alleging discrimination and retaliation on the basis of national origin and age. AC at 17–18. On July 11, 2019, unable to process Cano's charge within 180 days of its filing, the EEOC issued Cano a notice of right to sue. *Id.* at 14.

## II.    Procedural Background

On September 23, 2019, Cano filed suit in this Court. Dkt. 2. On November 25, 2020, Cano amended his complaint; his AC is the operative version today. *See generally* AC.[6]  On December 9, 2020, the Union moved to dismiss the AC. Dkt. 46. On February 25, 2021, Solil moved to dismiss the AC. Dkt. 63.

On June 15, 2021, Judge Parker issued a Report and Recommendation to this Court, recommending that the Union's motion to dismiss be granted in full and that Solil's motion to dismiss be granted in part and denied in part ("Report"). Dkt. 75. On June 29, 2021, Solil filed a letter setting forth its objections to the Report ("Solil Obj."). Dkt. 77. On July 1, 2021, Cano filed a letter setting forth his own objections ("Cano Obj."). Dkt. 79. On July 7, 2021, and July 14, 2021, the Union and Solil, respectively, filed their oppositions to Cano's objections. Dkts. 80, 82. On July 15, 2021, Cano filed his opposition to Solil's objections. Dkt. 84.[7]

For the following reasons, the Court adopts the Report in its entirety.

---

[6] The AC was timely under a revised scheduling order issued by Judge Parker. *See* Dkt. 60.

[7] On July 20, 2021 and July 28, 2021, Cano filed replies to the oppositions to his objections filed by the Union and Solil. Dkts. 85, 86. The Court does not consider the arguments raised in those replies, as they are not authorized by the relevant statute, 28 U.S.C. § 636(b), or the Federal Rules of Civil Procedure, and Cano did not seek leave to file any such replies.

### III.    Legal Standards

#### A. Standard of Review for a Report and Recommendation

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When specific objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). To accept those portions of a report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (citing *Wilds v. U.P.S.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)); *see also Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006).

To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review a Report and Recommendation strictly for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, Nos. 09 Civ. 7583, 10 Civ. 0812 (RJH) (GWG), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012). This is so even in the case of a *pro se* plaintiff. *See Dickerson*, 2013 WL 3199094, at *1; *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009).

#### B. Motions to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145. That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The Court is "obligated to construe a *pro se* complaint liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), interpreting it "to raise the strongest arguments that [it] suggest[s]," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted). This requirement "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y. State Dep't of Lab.*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). However, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotation marks and citation omitted). The Court may not read into *pro se* submissions claims inconsistent with the *pro se* litigant's allegations, *see Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005), or arguments that the submissions themselves do not "suggest," *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (citation omitted).

## IV.   Discussion

Cano brings numerous claims which, for clarity, the Court groups as follows: (1) hostile work environment claims against Solil under federal and state law; (2) discrimination claims

against Solil under federal and state law; (3) retaliation claims against Solil under federal and state law; (4) hostile work environment, discrimination, and retaliation claims against Solil under city law; (5) hostile work environment, discrimination, and retaliation claims on the basis of age against Solil under federal, state, and city law; (6) hybrid claims against both Solil and the Union under federal law; (7) discrimination claims directly against the Union under federal, state, and city law; and (8) common law claims.

### A. Hostile Work Environment Claims

The Report recommended denying Solil's motion to dismiss Cano's hostile work environment claims, finding that the AC stated such claims, based on the discriminatory comments allegedly made by Cano's co-workers and supervisors during a short period of time, and on their allegedly trumped up criticisms of his performance so as to justify firing him. Report at 14–15.

### 1. Legal Principles

Hostile work environment claims under Title VII, Section 1981, and the NYSHRL are judged by the same standard.[8] *See Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013) ("Hostile work environment claims under both Title VII and the NYSHRL are governed by the same standard."); *Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (noting that "[m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981" and identifying scenarios, none applicable here, where they differ); *Rivera v.*

---

[8] In August 2019, the NYSHRL was amended to broaden its liability standards. *See* N.Y. Exec. Law § 300.  But Cano does not allege discriminatory or retaliatory conduct after the amendments took effect, and the amendment does not have retroactive effect. *See McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68–69 (S.D.N.Y. 2020).  In any event, for the reasons that follow, Cano has stated claims under the more rigorous pre-amendment standard.

*Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 n.4 (2d Cir. 2014) ("The same standards [under Title VII] apply to the plaintiffs' hostile environment claims arising under the NYSHRL and to their claims arising under 42 U.S.C. § 1981.") (citations omitted). "To establish a hostile work environment . . . a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn v. City of N.Y.*, 795 F.3d 297, 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

The hostile work environment test has objective and subjective elements. "[T]he conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (citing *Harris*, 510 U.S. at 21–22). When deciding "whether a plaintiff suffered a hostile work environment, [the Court] must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Love v. Premier Util. Servs., LLC*, 186 F. Supp. 3d 248, 253 (E.D.N.Y. 2016) (quoting *Littlejohn*, 795 F.3d at 321).

"[W]hether racial slurs constitute a hostile work environment typically depends upon 'the quantity, frequency, and severity' of those slurs, considered 'cumulatively in order to obtain a realistic view of the work environment.'" *Schwapp v. Town of Avon*, 118 F.3d 106, 110–11 (2d Cir. 1997) (quoting *Vore v. Indiana Bell Tel. Co.*, 32 F.3d 1161, 1164 (7th Cir. 1994) and *Doe v. R.R. Donnelley & Sons*, 42 F.3d [439,] 444 [(7th Cir. 1994)]. "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be

deemed pervasive.'" *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).

However, the Second Circuit has "cautioned against setting the bar too high" for such claims at the motion to dismiss stage. *Id.* To survive a motion to dismiss, a plaintiff must allege facts showing "she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Terry*, 336 F.3d at 148).

## 2. Application

In its objections to the Report, Solil argues that Cano's allegations do not make out a "severe or pervasive" hostile work environment and hence do not state a claim. Solil describes Cano's work environment as, at most, consisting of "petty slights and trivial inconveniences" including altered work orders, refusals to help repairs, and the like; Solil further claims that the AC alleges "only three comments," each made by a different person, that actually reference Cano's race or national origin.[9] Solil Obj. at 11–12.

Contrary to Solil's argument, the AC alleges sufficient facts to state a hostile work environment claim, based on race and national origin. Cano has clearly pled facts to meet his burden with respect to the subjective prong. *See, e.g.*, AC at 5, 6–8, 17. As to the objective prong, Solil's characterization of the AC as alleging only three comments made by different people is both wrong (there are more than three comments alleged) and non-dispositive. *See Alfano*, 294 F.3d at 374 ("[E]ven a single act can meet the threshold if, by itself, it can and does

---

[9] Solil's argument, for the most part, repeats its argument before Judge Parker. Accordingly, the Court need only review for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013). But, for the reasons below, Solil's argument would fail even upon *de novo* review.

work a transformation of the plaintiff's workplace."). And Solil ignores crucial context making plausible Cano's claim of a severe and pervasive hostile work environment.

Specifically, Cano alleges that numerous Solil employees—including his superiors—repeatedly targeted him with epithets keyed to his race and national origin. Cano's coworker, Ball, allegedly called him a "fucking Colombian, motherfucker" and a "Faggot, Fucking Colombian, Fucking Spanish." AC at 6–7, 17. The building superintendent to whom Cano answered, Mehmedovic, allegedly told him, "you don't belong here, fucking Colombian, you don't even deserve[] to live in this country, and I will get you fired soon." *Id.* at 8. Mehmedovic also allegedly instructed Cano not to speak Spanish with coworkers in front of tenants, *id.* at 5, and told Cano that he was a "slave" to the tenants in the building, *id.* at 17. The property manager to whom Cano answered, Price, allegedly told him, "I don't like fucking Spanish people, you don't deserve[] to work here and you should go looking for a new job as[s]hole." *Id.* at 8. Price also allegedly told Cano, "you should continue drug trafficking in Colombia and stop wasting my fucking time." *Id.*

Moreover, Cano alleges that Mehmedovic and Price did nothing to stop Ball's behavior despite Cano's complaints to them about it. *Id.* at 5, 8, 17. To the contrary, as alleged, Cano's superiors not only hurled slurs themselves, but they also fabricated tenant complaints to create the appearance that Cano did poor work, so as to unjustifiably discipline him. *Id.* at 5, 8. This behavior occurred over just a few months. Considering these allegations together, Cano plausibly pleads that a "reasonable employee" in this context "would find the conditions of her employment altered for the worse.'" *Patane*, 508 F.3d at 113; *see Rasmy v. Marriot Int'l, Inc.*, 952 F.3d 379, 388 (2d Cir. 2020) ("[T]he entire course of conduct is relevant to a hostile work environment claim."). Accordingly, the AC plausibly states a claim for hostile work

environment. *See Brown v. Montefiore Med. Ctr.*, No. 19 Civ. 11474 (ALC), 2021 WL 1163797

(S.D.N.Y. Mar. 25, 2021) (upholding hostile work environment claim where evidence of racial

antipathy contextualized circumstantial evidence of harassment and noting that assessing the

validity of defendant's counter-narrative would be inappropriate at motion to dismiss stage);

*Bernardi v. N.Y. State Dep't of Corr.*, No. 19 Civ. 11867 (KMK), 2021 WL 1999159, at *7–8

(S.D.N.Y. May 19, 2021) (collecting cases and denying motion to dismiss hostile work

environment claim under Title VII and NYSHRL where colleagues told plaintiff to "go back to

his own country" and used Italian slurs).

   The cases Solil cites are not to the contrary. In *Erasmus v. Deutsche Bank Ams. Holding

Corp.*, No. 15 Civ. 1398 (PAE), 2015 WL 7736554, at *6 (S.D.N.Y. Nov. 30, 2015), comments

and gestures made by the plaintiff's co-worker were "crude," but not as severe as the overtly

racist ones Cano alleges here; the incidents were dispersed over a four-year period in contrast to

the compact few-months period here, *id.* at *1, 6; and the plaintiff failed to allege that the co-

worker's conduct was imputable to the employer defendant, *id.* at *6. Here, by contrast, Cano

alleges that his superiors both knew about his coworker's, and participated in their own, racially

motivated harassment. As to *Maines v. Last Chance Funding, Inc.*, the sole fact alleged by the

relevant plaintiff there was that he was called "old" and "dumb"—his remaining allegations were

conclusory allegations of disparate treatment, unlike the specific and sufficient facts the AC

pleads. No. 17 Civ. 5453 (ADS) (ARL), 2018 WL 4558408, at *11 (E.D.N.Y. Sept. 21, 2018).

And in *Ahmad v. White Plains City Sch. Dist.*, the plaintiff failed to detail the frequency or

severity of the alleged discriminatory comments, many of which did not plausibly suggest a

discriminatory motive. No. 18 Civ. 3416 (KMK), 2019 WL 3202747, at *8 (S.D.N.Y. July 16,

2019). Conversely, here the AC alleges severe remarks that are facially discriminatory, and

made in close proximity to a disciplinary action supported only by fabricated and pretextual

reasons. Finally, unlike in *Erasmus* or *Maines*, the litigant here is *pro se*, and his pleadings must

be construed liberally. *See McEachin*, 357 F.3d at 200–201. Solil's objections fail.

## B. Discrimination Claims

Cano brings discrimination claims against Solil under Title VII, Section 1981, and the

NYSHRL, alleging disparate treatment based on race, ethnicity, and national origin. The Report

recommended denying Solil's motion to dismiss these claims, because, (1) contrary to Solil's

argument, Cano plausibly alleged that he was qualified for the job, based on his having been

hired and transferred to work at a new location after more than a year of employment, and that

the criticisms of his performance were fabricated; and (2) Price and Mehmedovic played a

supervising role and threatened to take adverse employment action against Cano, respectively,

and made discriminatory comments and fabricated performance criticisms, shortly before Cano

was terminated. Report at 19–20.

### 1. Legal Principles

Disparate treatment claims under Title VII, Section 1981, and the NYSHRL are analyzed

under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973). *See Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (Title VII and NYSHRL);

*Littlejohn*, 795 F.3d at 312 (Title VII and Section 1981). The plaintiff bears the initial burden of

establishing a *prima facie* case of discrimination. *See Holcomb v. Iona Coll.*, 521 F.3d 130, 138

(2d Cir. 2008). To do so, the plaintiff must show that "(1) he belonged to a protected class; (2)

he was qualified for the position he held; (3) he suffered an adverse employment action; and (4)

the adverse employment action occurred under circumstances giving rise to an inference of

discriminatory intent." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir.

14

2012) (quoting *Holcomb*, 521 F.3d at 138). The burden of establishing a *prima facie* case in an employment discrimination case is "minimal." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *see also Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019).

However, at the motion to dismiss stage, a plaintiff "is not required to plead a *prima facie* case under *McDonnell Douglas*." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015); *see also Forkin v. Loc. 804 Union (IBT)*, 394 F. Supp. 3d 287, 307 (E.D.N.Y. 2019) ("At the pleading stage, . . . a plaintiff need not prove discrimination or even allege facts establishing every element of the *McDonnell Douglas prima facie* case."). Instead, "[t]he facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Littlejohn*, 795 F.3d at 311.

For employment discrimination claims under Title VII and the NYSHRL, a plaintiff must "plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 86; *see Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 51 (S.D.N.Y. 2019). A plaintiff may satisfy this standard by "alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87. In short, the complaint must plead facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. Under Section 1981, a plaintiff must plausibly allege that "but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1015 (2020); *see also Brown*, 2021 WL 1163797, at *4–5. Factors to consider in assessing claims of discriminatory intent based on allegedly discriminatory remarks include (1) who made the remark; (2) when the remark was

made in relation to the employment decision at issue; (3) the content of the remark; and (4) the context in which the remark was made. *See Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010).

### 2. Application

Solil first argues that the AC fails to allege, as required, that Cano was qualified for the position. *See Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir. 1978). Acknowledging that the Report rejected this argument as inappropriate for resolution on the pleadings, Solil Obj. at 4 (citing Report at 18 n.9), Solil insists that Cano has "admitted the facts asserted by Defendants in support of his termination," *id.*, and that courts may dismiss claims "where allegations of misconduct supporting a plaintiff's termination are upheld," *id.* (citing *Soloviev v. Goldstein*, 204 F. Supp. 3d 232, 248 (E.D.N.Y. 2015)).

Solil's premise is wrong. Cano has not "admitted the facts asserted by Defendants in support of his termination." *Id.* Cano and Solil appear to agree as to discrete factual points, such as the fact that Cano did not immediately repair a tenant's air-conditioning unit. But the AC pleads other facts and context that make Cano's claims plausible, including that Cano's supervisors fabricated tenant complaints underlying many incidents. To credit Solil's argument that Cano was not qualified, the Court would have to make factual determinations directly at odds with those pled. That, as Judge Parker recognized, is improper at this stage. *See Koch*, 699 F.3d at 145 (courts must "accept as true the facts alleged in the Complaint, drawing all reasonable inferences in favor of the plaintiff"); *see also* Report at 18 n.9.

Solil's second argument—that the AC does not allege facts evincing discriminatory intent—also fails. As alleged, one co-worker (Ball) and two superiors (Mehmedovic and Price) uttered discriminatory slurs and fabricated claims against Cano, and did so in the few months

16

before Cano's termination.  By their nature and their temporal proximity to the termination, these actions plausibly give rise to an inference of discriminatory intent.  *See, e.g., LaSalle v. City of N.Y.*, No. 13 Civ. 5109 (PAC), 2015 WL 1442376, at *5 (S.D.N.Y. Mar. 30, 2015) ("Verbal comments raise an inference of discrimination, if there is a nexus between the comments and an adverse employment decision.").

Solil also faults the AC because it is "devoid of any allegation that either Price or Mehmedovic made the decision to terminate Plaintiff's employment or even that either of them had the authority to make such a decision."  Solil Obj. at 6; *see also id.* n.2 ("Plaintiff's co-worker, Ball, had [no] supervisory authority over Plaintiff.").  But at the pleading stage, that fact is not fatal.  As pled, the supervisors and Ball collectively discriminated against Cano, and when Cano complained of Ball's conduct to these superiors, they did nothing in response.  Discovery will determine whether and to what extent these supervisors also participated in the termination process and decision.  But, reading the allegations in totality and in the light most favorable to Cano, and with solicitude to his *pro se* status, these supervisors are fairly pled to have been participants in the termination.

For much the same reasons, that Price "did not author the December 12, 2018 termination letter" does not make the claim implausible that he participated in the decision to terminate Cano.  *Id.* at 6.  The termination letter was sent by Solil's counsel.  Dkt. 2-2 at 50–51.  Although counsel's authorship leaves unknown who within Solil participated in the termination decision, Cano plausibly alleges that Price—who just months earlier signed the suspension letter that Mehmedovic delivered to Cano—was a participant.  *See* Dkt. 2-1 at 10.  Viewed in totality, the AC plausibly pleads that Price and Mehmedovic—superiors to whom Cano answered, who worked in tandem to effect adverse employment decisions against Cano before, and one of

17

whom specifically allegedly said, "fucking Colombian, you don't even deserve[] to live in this country and I will get you fired soon"—had both the discriminatory intent and authority to terminate Cano's employment. Discovery will test whether that allegation is substantiated.

## C. Retaliation Claims

Cano brings retaliation claims under Title VII, Section 1981, and the NYSHRL, alleging retaliation based on race, ethnicity, and national origin. The Report recommended denying Solil's motion to dismiss these claims, because Cano's alleged complaints to his supervisors put Solil on notice of unlawful discrimination and harassment, and he was suspended and later terminated within three months of lodging those complaints. Report at 23–25.

### 1. Legal Principles

As with disparate treatment claims, retaliation claims under Title VII, Section 1981, and the NYSHRL are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020) (citation omitted) (Title VII and the NYSHRL); *Littlejohn*, 795 F.3d at 315 ("Retaliation claims under Title VII and § 1981 are both analyzed pursuant to Title VII principles and the *McDonnell Douglas* burden-shifting evidentiary framework.") (footnote omitted). To state a *prima facie* case, a plaintiff must present evidence that shows "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).

The plaintiff's burden of proof at the prima facie stage is "*de minimis*." *Hicks*, 593 F.3d at 166. If the initial burden is met, "a 'presumption of retaliation'" arises, which the employer "may rebut by 'articulating a legitimate, non-retaliatory reason for the adverse employment

action.'" *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015) (brackets omitted)

(quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).  If the employer

provides such a reason, "the presumption of retaliation dissipates," and the burden shifts back to

the plaintiff to prove "that the desire to retaliate was the but-for cause of the challenged

employment action."  *Id.* (citation omitted).

   "As with discrimination claims, at the motion to dismiss stage, 'the allegations in the

complaint need only give plausible support to the reduced *prima facie* requirements that arise

under *McDonnell Douglas* in the initial phase of . . . litigation.'"  *Farmer*, 473 F. Supp. 3d at 331

(quoting *Duplan v. City of N.Y.*, 888 F.3d 612, 625 (2d Cir. 2018)).  For a retaliation claim to

survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants

discriminated—or took an adverse employment action—against him, (2) because he has opposed

any unlawful employment practice."  *Duplan*, 888 F.3d at 625 (citation omitted).  "As for

causation, a plaintiff must plausibly plead a connection between the act and his engagement in

protected activity."  *Vega*, 801 F.3d at 90.  The desire to retaliate must have been a "but-for"

cause of the adverse employment action.  *See Lively v. WAFRA Investment Advisory Group, Inc.*,

6 F.4th 293, 304 (2d Cir. 2021) (but-for causation requirement applies to Title VII retaliation

claims); *Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 125 n.17 (S.D.N.Y. 2020)

(same for NYSHRL).

## 2. Application

   Solil's objections recycle the argument Judge Parker convincingly rejected: that the AC is

deficient because it alleges only generally that Cano complained about discrimination and

harassment that Solil was on notice of those complaints.  Solil Obj. at 9.  In fact, in contrast to

*Majeed v. ADF Cos.*, No. 11 Civ. 5459 (SJF) (ETB), 2013 WL 654416 (E.D.N.Y. Feb. 20,

2013), on which Solil relies, Solil Obj. at 9, the AC makes more than a general allegation of such complaints by Cano, and is suitably specific about the retaliatory acts it alleges, *cf. Majeed*, 2013 WL 654416, at *11.

Indeed, the AC specifies that Cano complained to Mehmedovic about Ball's discriminatory and harassing behavior, such as calling Cano a "fucking Colombian, motherfucker." AC at 6, 17.  Cano, it alleges, did so "many times," *id.* at 5, only to be met with more harassment from his supervisor, *see id.* at 8 (alleging that Mehmedovic said, "you don't belong here, fucking Colombian, you don't even deserve[] to live in this country").  The AC further alleges that Cano confronted Price regarding Ball's behavior, asking why Price was "helping" Ball.  Price responded that he didn't "like fucking Spanish people" and that Cano did not deserve to work in the building.  *Id.*  Solil relies on the Report's observation that the AC does not set out "the precise words [Cano] used when confronting Price about this failure to help with Ball." Report at 24.  But considering all allegations, and reading the AC with solicitude for the *pro se* plaintiff Cano, it plausibly implies that Cano's complaints concerned the racial discrimination and harassment he faced from Ball, and of Price's apparent approval of, and acquiescence in, such misconduct.

As pled, Cano's complaints to supervisors of harassment on the basis of race and/or national origin, and of supervisory approval of such conduct, plausibly alleges protected activity. *See Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) ("An employee's complaint may qualify as protected activity, . . . 'so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'" (quoting *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001)); *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) ("In addition to protecting the filing of formal

20

charges of discrimination, [Title VII's] opposition clause protects as well informal protests of discriminatory employment practices, including making complaints to management."). And the AC also plausibly pleads retaliation for such protected activity. Cano was suspended within three months of his first complaints to Mehmedovic about Ball, and fired within two months of his complaints to and about Price. *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) ("This Court . . . has consistently held that proof of causation can be shown . . . by showing that the protected activity was followed closely by discriminatory treatment."); *Jackson v. N.Y. State Off. of Mental Health*, No. 11 Civ. 7832 (GBD) (KNF), 2012 WL 3457961, at *11 (Aug. 13, 2012) ("Generally, courts in this circuit have held that the temporal nexus between the protected activity and the adverse employment action must be three months or less to establish a causal connection.") (collecting cases). The AC thus plausibly states a claim for retaliation.[10] Solil's objections as to the Report's recommendation thus also fail.[11]

### D. NYCHRL Claims

Cano brings claims against Solil for hostile work environment, discrimination, and retaliation under the NYCHRL. The Report recommended denying Solil's motion to dismiss Cano's claims arising under the NYCHRL for the same reasons it recommended denying the

---

[10] Because the AC states a claim for retaliation based on Cano's complaints directly to his superiors at Solil, Solil's argument that it did not learn of Cano's separate complaints to the Union and the NLRB until after Cano's termination is of no moment. *See* Solil Obj. at 9.

[11] Cano does not appear to object to the Report's dismissal of his retaliation claims to the extent they are based on his allegations that Solil "provid[ed] false information to labor department about [his] termination alleging violent reaction with a coworker." AC at 5. In any event, Judge Parker rightly dismissed the claim, because the AC does not allege facts as to what was said or how it would qualify as actionable retaliation. *Cf. Talyansky v. Xerox Corp.*, 22 F. Supp. 2d 55, 56 (W.D.N.Y. 1998), *aff'd*, 182 F.3d 901 (2d Cir. 1999) (summary order) (dismissing Title VII claim alleging retaliation via unsatisfactory references to prospective employers).

motion to dismiss Cano's hostile work environment, discrimination, and retaliation claims under federal and state law.

### 1. Legal Principles

#### a. *Discrimination and hostile work environment*

Under the NYCHRL, "there are not separate standards for 'discrimination' and 'harassment' claims; rather, 'there is only the provision of the law that proscribes imposing different terms, conditions and privileges of employment based'" on a protected characteristic. *Clarke v. InterContinental Hotels Grp., PLC*, No. 12 Civ. 2671 (JPO), 2013 WL 2358596, at *11 (S.D.N.Y. May 30, 2013) (quoting *Sotomayor v. City of N.Y.*, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012)). "NYCHRL claims are to be reviewed more liberally than Title VII claims, and the provisions of the NYCHRL must be construed broadly in favor of plaintiffs alleging discrimination." *Levy v. Legal Aid Soc'y*, 408 F. Supp. 3d 209, 217 (E.D.N.Y. 2019) (quoting *Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 71 (2d Cir. 2016) (summary order)); *see also Williams v. N.Y.C. Transit Auth.*, 171 A.D.3d 990, 992 (N.Y. App. Div. 2d Dep't 2019). Claims under the NYCHRL must be analyzed separately, as conduct not actionable under Title VII may be "actionable under the broader New York City standards." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).

"[W]here an adverse employment action is shown to be 'motivated by [unlawful] animus, even in part, the defendant may be held liable' under the NYCHRL." *Williams*, 171 A.D.3d at 992–93 (quoting *Singh v. Covenant Aviation Sec., LLC*, 131 A.D.3d 1158, 1161 (N.Y. App. Div. 2d Dep't 2015)). But a plaintiff's "mere subjective belief that he was discriminated against because of his [race, religion, or national origin] does not sustain a . . . discrimination claim."

*Joseph v. Owens & Minor Distrib., Inc.*, 5 F. Supp. 3d 295, 309 (E.D.N.Y. 2014) (citation

omitted), *aff'd*, 594 F. App'x 29 (2d Cir. 2015) (summary order).

For discrimination claims based on harassment or a hostile environment, the NYCHRL's

pleading standard is lower than the NYSHRL's (and, in turn, Title VII's and Section 1981's).  It

imposes liability for harassment that may be short of "severe or pervasive," although the severity

and pervasiveness of misconduct is germane to damages. *Williams v. N.Y.C. Hous. Auth.*, 61

A.D.3d 62, 76 (N.Y. App. Div. 1st Dep't 2009) (citation omitted).  Nevertheless, even under the

NYCHRL, "petty slights or trivial inconveniences" are not actionable.  *Id.* at 80.

b.  *Retaliation*

"The elements of a prima facie case of retaliation under Title VII, the NYSHRL, and the

NYCHRL are identical, except that the NYCHRL employs a broader standard of an adverse

employment action than its federal and state counterparts." *Smith*, 385 F. Supp. 3d at 345–46

(cleaned up).

## 2.  Application

For the reasons above, Cano has stated claims for hostile work environment,

discrimination, and retaliation under Title VII, Section 1981, and the NYSHRL.  Because the

standards of these statutes are as or more strict than those of the NYCHRL, Cano's parallel

claims under the NYCHRL necessarily survive, too. *See Farmer*, 473 F. Supp. 3d at 327.

## E.  Age-Based Claims Under Federal, State, and City Law

The AC appears to allege, on the basis of age, hostile work environment, discrimination,

and retaliation claims against Solil.  The Report recommended granting Solil's motion to dismiss

these claims, because the AC does not plead facts suggesting that Solil was motivated by ageism

in terminating Cano's employment or that Cano was treated differently from similarly situated younger workers. Report at 20–21. That assessment, too, is correct.

The AC has not adequately pled any hostile work environment, discrimination, or retaliation claim based on age, whether arising under federal (including the ADEA), state, or city law. It alleges only two stray remarks from Ball: (1) "I can imagine this building in a couple years, being run by three old men"; and (2) that he wanted a younger person to fill in the handyman position, as the previous handyman apparently had been age 73 and had "leg problems," leaving Ball "to do all the hard ph[y]sical work for years." AC at 7. Although the latter comment conceivably could be taken to disparage the physical capabilities of older individuals, the former statement, without more, does not carry such negative implication. In any event, even assuming that the AC (on the basis of the statements attributed to Ball) pled skepticism by Ball of the capabilities of older persons, the AC is devoid of facts linking this attitude to an adverse employment decision. Thus, the Court, in accord with the Report, dismisses all claims sounding in age discrimination. *See Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) (dismissing claims where isolated comments by a non-decisionmaker, while potentially offensive, did not lead to an inference of discriminatory intent).

### F. Hybrid Claims Against Solil and the Union

Cano also alleges a "breach of contract," apparently in reference to a collective bargaining agreement which, he claims, Solil breached. In cases like these, courts analyze "breach of contract" claims as hybrid claims against an employer and a union, arising under Section 301 of the Labor Management Relations Act ("LMRA") and Section 159 of the National Labor Relations Act ("NLRA"). *See Lomako v. N.Y. Inst. of Tech.*, No. 09 Civ. 6066 (HB), 2010 WL 1915041, at *7 (S.D.N.Y. May 12, 2010) ("[A]n employee may bring a claim against his

employer . . . alleging that it breached a collective bargaining agreement, but because such claims require interpretation of the terms of the CBA, they are governed under the LMRA, and not ordinary breach-of-contract principles.") (citing, *inter alia, Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988)); *Carrion v. Enter. Ass'n, Metal Trades Branch Loc. Union 638*, 227 F.3d 29, 34 (2d Cir. 2000) ("Where, as here, the 'nature of the claim' is that the employer breached the CBA and that the union breached its duty to enforce the CBA," plaintiff "has alleged a hybrid § 301/fair representation claim."). Hybrid claims allow recourse in federal court to employees with related claims against their employers and their unions. *See Carrion*, 227 F.3d at 33–34 (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983); *Vera v. Saks & Co.*, 424 F. Supp. 2d 694, 705 (S.D.N.Y. 2006), *aff'd*, 208 F. App'x 66 (2d Cir. 2006) (summary order)).

The Report recommended granting the Union's motion to dismiss Cano's hybrid claim, because the AC did not plead, as required, that the Union acted arbitrarily, discriminatorily, or in bad faith, in violation of its duty of fair representation. Report at 28–29. The Report also recommended that the claim be dismissed as time-barred and because Cano failed to exhaust administrative remedies. *Id.* at 30–32.

### 1. Legal Principles

Hybrid claims have two elements: "(1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation in redressing [a] grievance against the employer." *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 128 F.3d 110, 113 (2d Cir. 1997) ("*White I*"). Importantly, proof of the "Union's breach is a prerequisite to consideration of the merits of plaintiff's claim against" the employer. *Young v. U.S. Postal Serv.*, 907 F.2d 305, 307 (2d Cir. 1990); *accord DelCostello*, 462 U.S. at 165 ("To

prevail against either the [employer] or the Union, [plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.") (citations omitted).

To establish a breach of the duty of fair representation, a plaintiff must demonstrate that a union's conduct toward her was "arbitrary, discriminatory, or in bad faith," causing damages. *See Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers*, 415 F.3d 279, 282–83 (2d Cir. 2005) (per curiam) (citing *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998); *Spellacy v. Airline Pilots Ass'n Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)). A union acts arbitrarily only if, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Airline Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991). A union acts discriminatorily where "'substantial evidence' indicates that it engaged in discrimination that was 'intentional, severe, and unrelated to legitimate union objectives.'" *Vaughn v. Airline Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Amalgamated Ass'n of St., Elec., Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971)). And a union acts in bad faith only if acts fraudulently, deceitfully, or dishonestly. *See White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 179 (2d Cir. 2001).

### 2. Application

It is difficult to discern the extent to which Cano objects to the Report's treatment of his allegations against the Union. In recognition of Cano's *pro se* status, and in the interest of thoroughness, the Court reviews Cano's claims *de novo*.

Cano's complaints against the Union are that it (1) failed to properly process his grievances, AC at 6; Dkt. 2-2 at 63; (2) acted in "complicity" with Ball, Mehmedovic, and Price

to create a hostile work environment, AC at 6; (3) failed to mention all alleged perpetrators or misidentified the perpetrators in the cease-and-desist letters it sent, AC 9–10; and (4) did not take Cano's claims to arbitration, Dkt 2-2 at 63. None plausibly alleges that the Union's conduct was discriminatory, arbitrary, or in bad faith.

As to the first complaint, in September 2018, Cano submitted grievances regarding Ball's behavior and his alleged wrongful suspension—but the Union, allegedly, did not send cease-and-desist letters to Solil until after Cano's employment had already been terminated. Without more, this apparent delay in timely processing Cano's grievances, although regrettable, is not actionable. "A union's failure or refusal to pursue a grievance on its own does not constitute a breach of the duty of fair representation." *Vera*, 424 F. Supp. 2d at 706; *see also, e.g.*, *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 563 (S.D.N.Y. 2005) ("[R]efusing to pursue a grievance does not automatically constitute a breach of the duty of fair representation."). Indeed, "the duty of fair representation is not breached where the union fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance." *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1153–54 (2d Cir. 1994); *see also United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372–73 (1990) ("[M]ere negligence, even in the enforcement of a collective-bargaining agreement, [does] not state a claim for breach of the duty of fair representation.").

Cano's second complaint—the general contention that the Union acted in "complicity" with Solil employees to create a hostile work environment—also fails to state a claim. Read liberally, the AC suggests union representative Donovan Cole, in some unspecified fashion, worked in tandem with Solil to create a hostile work environment. *See* Dkt. 2-2 at 63. For

instance, Cano claims that, following Cano's suspension, Cole "didn't provide [Cano] a copy of management[']s accusations, he just was making time for the people harassing [Cano] at work, to create more situations to justify [Cano's] work termination." *Id.* And, Cano alleges, Cole "knew from before" that Solil intended to terminate Cano's employment. *Id.* These allegations, however, are conclusory and general. They do not supply a plausible factual basis on which to infer that Cole knowingly participated in, or furthered, or even was aware of others' discrimination or harassment.

Cano's third complaint is, effectively, that the Union made a scrivener's error in the cease-and-desist letters it sent. Cano complains that the letters were directed at Cano's "supervisor," rather than Ball. But given Cano's allegations that his supervisors (Mehmedovic and Price) engaged in discriminatory and harassing conduct, the Union's direction of the letter to them is understandable. Regardless, any lapse in the addressee of the letter would not, without more, make out a violation of the duty of fair representation.

Cano's fourth complaint, that the Union opted not to take his claims to arbitration, does not make out an actionable claim, either. "[A] union member has no absolute right to have his or her grievance taken to arbitration." *Vaca*, 386 U.S. at 191. And as Judge Parker noted, at this stage, although Cano need not demonstrate that his grievance would have been meritorious, he must plead facts plausibly suggesting discriminatory, arbitrary, or bad faith conduct. Report at 28 (citing *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003); *see also Ponticello v. Cty. of Suffolk*, 225 A.D.2d 751, 751–52 (N.Y. App. Div. 2d Dep't 1996) (rejecting claim that union violated duty of fair representation by refusing to take grievance to arbitration, where evidence did not suggest discriminatory, arbitrary, or bad faith conduct). The AC lacks such allegations.

For the foregoing reasons, the AC does not plausibly state a violation of the Union's duty of fair representation. Accordingly, the Court does not have occasion to address whether Cano's allegations of an underlying breach by Solil of the collective bargaining agreement are adequately pled. *See Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*, 204 F. App'x 40, 42 (2d Cir. 2006) (summary order) ("[W]e need not determine whether the [employer] breached the collective bargaining agreement . . . because [plaintiff] has failed to establish that the Union breached its duty of fair representation.").

### 3. Statute of Limitations[12]

Cano's hybrid claims must be dismissed for a separate reason: they are time-barred. Such claims are subject to a six-month statute of limitations. *See White I*, 128 F.3d at 114 (citing *DelCostello*, 462 U.S. at 169). It begins to run when a plaintiff knew or reasonably should have known that a breach of the duty of fair representation had occurred, *id.*, or when the plaintiff became aware of an underlying grievance with the employer but unjustifiably failed to notify the union of it, *see id.* at 115; *see also Maurer v. Trans World Airlines, Inc.*, 316 F. Supp. 2d 84, 89 (D. Conn. 2003) (claim time-barred where plaintiff "waited a full year after her dismissal prior to sending a letter requesting information as to whether a grievance had been filed and the status of any grievance"); *Oliveras v. Garage Mgmt. Corp.*, No. 99 Civ. 1352 (LAP), 2000 WL 1277321, at *4 (S.D.N.Y. Sept. 8, 2000) ("[A]ny cause of action by [plaintiff] for breach of the collective bargaining agreement must have accrued on the date his employment ended . . . , at the latest.").

---

[12] Because Cano's hybrid claims are inadequately pled and time-barred—and because Cano does not expressly object to Judge Parker's holdings to this effect—the Court does not have occasion to consider whether the claims separately merit dismissal for failure to exhaust internal union procedures. *See Clayton v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, 451 U.S. 679, 689 (1981) ("[C]ourts have discretion to decide whether to require exhaustion of internal union procedures.").

On November 16, 2018, Cano filed his charge against the Union with the NLRB. That demonstrated his knowledge that the Union had, ostensibly, violated its duty of fair representation with respect to those grievances Cano filed. AC at 9; Dkt. 63-2 at 6, 12. He did not, however, file the instant action until ten months later, September 23, 2019. Cano's claims arising out of the Union's decision not to take Cano's complaints to arbitration are also time-barred. Cano appears to have received notice of that decision on April 17, 2020. Dkt. 20 at 4. But he did not amend his complaint to add such claims until more than six months later, on November 25, 2020. Cano's hybrid claims against the Union and Solil are therefore untimely. *See White I*, 128 F.3d at 114–15 (rejecting as time-barred a hybrid claim where plaintiff first amended complaint more than six months after union's refusal to take claim to arbitration).

### G. Claims Against the Union

Read liberally, the AC also appears to bring claims against Union for discrimination under Title VII, Section 1981, the NYSHRL, and the NYCHRL. The Report recommended granting the Union's motion to dismiss these claims, because the AC did not plausibly allege that the Union's actions were motivated by animus against Cano because of his race or national origin. Report at 29.

#### 1. Legal Principles

Discrimination claims against labor organizations are subject to a different analysis than that governing Title VII claims against employers. "[W]here a plaintiff claims that a union violated Title VII based on its failure to represent a member, courts in this Circuit generally incorporate the duty of fair representation as one of the elements of the alleged Title VII violation." *Beachum v. AWISCO N.Y.*, 785 F. Supp. 2d 84, 103 (S.D.N.Y. 2011), *aff'd sub nom. Beachum v. AWISCO N.Y. Corp.*, 459 F. App'x 58 (2d Cir. 2012) (quoting *Agosto v. Corr.*

30

*Officers Benevolent Ass'n*, 107 F. Supp. 2d 294, 304 (S.D.N.Y. 2000)); *see also id.* ("This

requirement also applies to cases under Section 1981.") (citing *McIntyre v. Longwood Cent. Sch.*

*Dist.*, 658 F. Supp. 2d 400, 423 (E.D.N.Y. 2009)); *Morillo v. Grand Hyatt N.Y.*, No. 13 Civ.

7123 (JGK), 2014 WL 3498663, at *4 (S.D.N.Y. July 10, 2014) ("[T]he weight of well-reasoned

authority in this Circuit finds that claims against a union and its representative under the

NYSHRL and NYCHRL are subsumed by the duty of fair representation when the gist of the

claim is the failure to represent the plaintiff in a fair and non-discriminatory manner."); *Grandy*

*v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 16 Civ. 6278 (VEC), 2018 WL

4625768, at *22 (S.D.N.Y. 2018) ("[C]laims brought against unions under the state and city anti-

discrimination statutes that arise out of the union's capacity as the plaintiff's representative

'require[ ] as a prerequisite a finding that [the union] breached its duty of fair representation.'"

(quoting *Gallagher v. AEG Mgmt. Brooklyn, LLC*, No. 16 Civ. 4779 (ILG), 2017 WL 2345658,

at *7 (E.D.N.Y. May 30, 2017)).

### 2. Application

For the reasons reviewed above, Cano has failed to state a claim for breach of the

Union's duty of fair representation.  Because such a breach is an element of claims brought

under the anti-discrimination statutes noted above, Cano's discrimination claims against the

Union necessarily fail.

### H.  Common Law Claims

It is unclear to what extent Cano objects to Judge Parker's dismissal of his common law

claims for defamation and negligent infliction of emotional distress ("NIED").  In the interest of

thoroughness, this Court will conduct a *de novo* review.  The Report recommended dismissing

the defamation claim because the AC did not plead the substance or details of any defamatory

comment; and the NIED claim because the AC did not allege that Cano's physical safety was threatened or that he was injured.  Report at 32–33.

## 1. Legal Principles

### a. *Defamation*

To establish a claim for defamation under New York law, a plaintiff must prove that: (1) the defendant published a defamatory statement of fact to a third party, (2) the statement of fact was false, (3) the false statement of fact was made with the applicable level of fault, and (4) either the false statement was defamatory *per se* or caused the plaintiff special harm.  *See, e.g.*, *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011); *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169 (2d Cir. 2003); *Thompson v. Bosswick*, 855 F. Supp. 2d 67, 76 (S.D.N.Y. 2012).  An otherwise defamatory statement can nevertheless be protected by privilege.  *See Chandok*, 632 F.3d at 814.

### b. *NIED*

Under New York law, a plaintiff alleging NIED must show "(1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress." *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 297 (S.D.N.Y. 2015) (citation omitted).  As to the first element, a plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Goldstein v. Mass. Mut. Life Ins. Co.*, 60 A.D.3d 506, 508 (N.Y. App. Div. 1st Dep't 2009) (quoting *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122 (1993)).

Under the case law, there are limited contexts in which a claim of NIED may be viable. A plaintiff must plead, in addition to the elements above, facts making out one of three

"theories": (1) a bystander theory, (2) a direct duty theory, or (3) a special circumstances theory. *See Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000). The only plausible theory in this action would be the direct duty theory, which requires a plaintiff to allege that "she suffer[ed] an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety." *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996). This duty "must be specific to the plaintiff, and not some amorphous, free-floating duty to society." *Id.* The direct duty theory also requires "an objective inquiry turning on whether a plaintiff's physical safety was actually endangered, not a subjective evaluation dependent on the plaintiff's state of mind." *Carney v. Bos. Mkt.*, No. 18 Civ. 713 (LGS), 2018 WL 6698444, at *3 (S.D.N.Y. Dec. 20, 2018) (quotation marks omitted).

### 2. Application

Cano's common law claims are quickly interred. As to defamation, the AC only vaguely asserts that Solil provided "false statements" to the Department of Labor and that Mehmedovic provided "a lot of false statements that should be categorize[d] as defamation" in "the affidavit provided for him." AC at 5, 8. But, as Judge Parker correctly explained, the AC does not allege the substance of any such false statements, or specify to whom they were made, when, or why. Report at 33. These allegations are too vague to survive. *See Camp Summit of Summitville, Inc. v. Visinski*, No. 06 Civ. 4994 (CM) (GAY), 2007 WL 1152894, at *12 (S.D.N.Y. Apr. 16, 2007) (collecting cases).

As to NIED, the AC does not allege that any defendant had a specific duty to Cano, or unreasonably endangered his physical safety. *See Baker*, 239 F.3d at 421; *Chau v. Donovan*, 357 F. Supp. 3d 276, 289 (S.D.N.Y. 2019). Cano's NIED claim, too, must be dismissed.

**I. Cano's Attacks on the Judiciary**

Finally, in his objections, Cano derides Judge Parker and alleges that unnamed "Pro Se clerks" have engaged in misconduct, including removing filings Cano has placed on the docket. Cano Obj. at 1–3. Cano's assertions have no place in this litigation. They are irrelevant to his claims. And they are unsubstantiated, largely unintelligible screeds that disrespect the laudable and significant work that Judge Parker and the staff of this Court have done to give Cano's claims a fair reading. Judge Parker has shown admirable solicitude for Cano in seeking to enable appointment of pro bono counsel for him—assistance he has, regrettably, spurned. *See, e.g.*, Dkt. 50 (order encouraging Cano to contact legal assistance group promptly and providing contact information for group); *see also* Report at 35 (noting that Cano was given a lengthy amount of time to find counsel and to file a Second Amended Complaint with the aid of a pro bono legal clinic, but that he elected to do neither). Cano's salvos at the professionals working at this Court merit condemnation. They do not provide any basis to reject any part of Judge Parker's thorough, well-reasoned, and 100% correct Report.

CONCLUSION

For the foregoing reasons, the Court accepts and adopts Judge Parker's June 15, 2021, Report and Recommendation in its entirety. Solil's motion to dismiss is granted in part and denied in part. The Union's motion to dismiss is granted. The Clerk of the Court is directed to terminate the motions at docket entries 46 and 63. This case remains referred to Judge Parker for general pretrial supervision.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: September 30, 2021
       New York, New York